IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BECK, KYLE J. OSTERHAUS, and CALLIE B. OSTERHAUS<br><br>Defendants. | Civil Action No.: 1:25-cv-00236 |

**COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION**

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, hereby seeks Declaratory Judgment against Defendants David Beck, Kyle J. Osterhaus, and Callie B. Osterhaus for the purpose of determining a question of actual, immediate controversy between the parties. Nautilus respectfully shows the Court as follows:

**PARTIES**

1. At all times pertinent to this action, Nautilus was, and still is, a company organized and existing under the laws of the State of Arizona with its principal place of business in Scottsdale, Arizona.

2. Defendant David Beck, an individual, is a citizen and resident of Buncombe County, North Carolina.

3. Defendant Kyle J. Osterhaus, an individual, is a citizen and resident of Buncombe County, North Carolina.

4. Defendant Callie B. Osterhaus, an individual, is a citizen and resident of Buncombe County, North Carolina.

5. Over the course of a seven-year period, Nautilus issued seven commercial general liability insurance policies to Defendant Beck (all hereinafter collectively referred to as the "Policies"), comprised of the following:

   a. Policy Number NN917430 for the policy period March 21, 2018 to March 21, 2019 ("2018-2019 Policy") (attached hereto as **Exhibit A**);

   b. Policy Number NC575498 for the policy period March 21, 2019 to March 21, 2020 ("2019-2020 Policy") (attached hereto as **Exhibit B**);

   c. Policy Number NN1019960 for the policy period March 21, 2020 to March 21, 2021 ("2020-2021 Policy") (attached hereto as **Exhibit C**);

   d. Policy Number NN1240194 for the policy period March 21, 2021 to March 21, 2022 ("2021-2022 Policy") (attached hereto as **Exhibit D**);

   e. Policy Number NN1375739 for the policy period March 21, 2022 to March 21, 2023 ("2022-2023 Policy") (attached hereto as **Exhibit E**);

   f. Policy Number NN1521447 for the policy period March 21, 2023 to March 21, 2024 ("2023-2024 Policy") (attached hereto as **Exhibit F**);

   g. Policy Number NN1653300 for the policy period March 21, 2024 to March 21, 2025 ("2024-2025 Policy") (attached hereto as **Exhibit G**);

6. By letter dated February 9, 2024, counsel representing Defendants Kyle J. and Callie B. Osterhaus (together, the "Osterhauses") provided notice of claims ("Notice of Claim") for damages allegedly resulting from the defective construction of the Osterhauses' home by
Case 1:25-cv-00236-MR-WCM    Document 1    Filed 07/28/25    Page 2 of 20
PD.49537328.4
2

Defendant Beck and an entity called Westmore Properties, LLC ("Westmore"). A copy of the Notice of Claim letter is attached hereto as **Exhibit H**.

7. On May 6, 2025, the Osterhauses filed a lawsuit in the Superior Court of Buncombe County seeking damages due to the purportedly defective construction of a home by Defendant Beck and Westmore, which lawsuit is captioned *Kyle J. Osterhaus and Callie B. Osterhaus v. Westmore Properties, LLC and David Beck*, Case No. 25CV002606-100 (the "Underlying Lawsuit"). A copy of the complaint in the Underlying Lawsuit is attached hereto as **Exhibit I**.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the Plaintiff and the Defendants and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

9. Per 28 U.S.C. § 1391, venue is proper in the United States District Court for the Western District of North Carolina, Asheville Division, because at least one Defendant resides in this District and each of the Defendants are residents of North Carolina. Alternatively, venue in this District is appropriate because substantial part of the events or omissions giving rise to the claim occurred in this District.

## NATURE OF CLAIM

10. This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of construing and interpreting the terms of an insurance contract and for a determination of the rights and obligations, if any, of the parties arising from the Policies.

11. An actual, present, and existing controversy exists among the parties to this lawsuit regarding the rights and obligations, if any, of the parties with respect to the Underlying Lawsuit and whether the Policies are void or otherwise do not provide coverage for the Osterhauses' claims.

12. All conditions precedent to the filing of this action have been performed or have occurred.

13. Count I of this Complaint seeks rescission of the Policies due to material misrepresentations by Defendant Beck on his applications for insurance submitted to Nautilus.

14. Nautilus seeks a declaration that the Policies issued to Defendant Beck were issued in reliance upon material misrepresentations and/or omissions and that, consequently, Nautilus is entitled to rescind the Policies void *ab initio*.

15. Alternatively, Count II of this Complaint seeks a judgment declaring that David Beck is not an insured under any of the Policies with respect to the allegations set forth in the Underlying Lawsuit.

16. Alternatively, Count III of this Complaint seeks a judgment declaring that some or all of the Osterhauses' claims and alleged damages as set forth in the Underlying Lawsuit are precluded from coverage to the extent that the following apply: (i) the absence of an "occurrence" or "property damage" during the policy period as those terms are defined by the Policy and North Carolina law; (ii) the Damage To Property Exclusion j(1), j(5) and j(6); (iii) the Damage To Your Product Exclusion (k); (iv) the Damage to Your Work Exclusion (l); (v) the Damage To Impaired Property Or Property Not Physically Injured Exclusion (m); (vi) the Recall Of Products, Work Or Impaired Property Exclusion (n); (vii) the Expected Or Intended Injury Exclusion; (viii) the Contractual Liability Exclusion; (ix) the Professional Services—Contractors, Engineers, Architects, Surveyors and Construction Management Exclusion; (x) the Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants Exclusion; and (xi) the Residential Construction Operations Coverage Limitation and Exclusion; and (xii) the Continuous or Progressive Damage Exclusion.

17. In addition to the foregoing provisions of the Policies, Nautilus pleads all other conditions, terms, warranties, limits, definitions, and exclusions of the Policies, which also may be found to be applicable, and Nautilus reserves the right to amend its Complaint for Declaratory Judgment and Rescission as additional and/or more specific information becomes available.

## THE APPLICATIONS

18. Beginning in March 2018—and successively thereafter in March of each year through 2023—Defendant Beck submitted six signed Commercial Insurance Applications (with Commercial General Liability Section) and Artisan Contractors Supplemental Applications (all hereinafter collectively, the "Applications") for commercial lines insurance policies with policy periods of one year, comprised of the following:

  a. Application materials signed March 21, 2018 ("2018-2019 Policy Application") (attached hereto as **Exhibit J**);

  b. Application materials signed March 1, 2019 ("2019-2020 Policy Application") (attached hereto as **Exhibit K**);

  c. Application materials signed March 20, 2020 ("2020-2021 Policy Application") (attached hereto as **Exhibit L**);

  d. Application materials signed March 8, 2021 ("2021-2022 Policy Application") (attached hereto as **Exhibit M**);

  e. Application materials signed March 21, 2022 ("2022-2023 Policy Application") (attached hereto as **Exhibit N**);

  f. Application materials signed March 20, 2023 ("2023-2024 Policy Application") (attached hereto as **Exhibit O**);

PD.49537328.4

19. In the Applications—each of which are substantively identical in terms of the information provided by Defendant Beck therein—Defendant Beck made the following representations:

   a. Defendant Beck is an "Artisan Contractor" as opposed to a "General Contractor." Ex. J, p. NAUTILUS_00442.[1]

   b. The "Nature of Business/Description of Operations" provides in relevant part as follows: "Carpentry Applicant performs NO roofing work of any kind. Applicant DOES NOT perform work on NEW apartment, condominium, townhouse, row house, or tract home construction projects." Ex. J, p. NAUTILUS_00438.

   c. The "Schedule of Hazards" Classifications states: "Metal framing rated as Carpentry – Construction of Residential Property not Exceeding 3 Stories in Height." Ex. J, p. NAUTILUS_00440.

   d. Responded "No" to the question "Are subcontractors hired?" Ex. J, p. NAUTILUS_00442.

   e. That "0%" of work is subcontracted, "$0.00" are paid to subcontractors, and subcontractor costs were "$0." Ex. J, p. NAUTILUS_00441-442.

   f. Defendant Beck's payroll was $24,800 and gross receipts were $25,000. Ex. J, p. NAUTILUS_00442.

   g. That roofing work made up "0%" of total operations performed by Defendant Beck or any subcontractors. Ex. J, p. NAUTILUS_00442.

---

[1] Because each of the individual Applications contain the same information, only one Application (the 2018-2019 Policy Application) is cited for the sake of efficiency and ease of reading. However, each of the Applications attached as an exhibit to this pleading contain the same representations as set forth herein.

h. Responded "No" in response to the question of "Do any operations include excavation, tunneling, underground work or earth moving?" Ex. J, p. NAUTILUS_00441.

20. Each of the Applications were signed by Defendant Beck, and in reliance on the representations therein, Nautilus issued the Policies to Defendant Beck.

## THE POLICIES

21. The Policies provide commercial general liability ("CGL") coverage to Defendant Beck, subject to certain terms, conditions, limitations, and exclusions.

22. The Policies' CGL Coverage Forms define "insured" as "any person or organization qualifying as such under Section II," which states in relevant part as follows: "If you are designated in the Declarations as . . . [a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." Ex. A, p. NAUTILUS_00016.

23. The Policies' Declarations list "David Beck" as the named insured individual, with a "Business Description of "Carpentry." Ex. A, p. NAUTILUS_00004.[2]

24. Coverage A of the Policies' CGL Coverage Form provides that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . caused by an 'occurrence,' " provided the " 'property damage' occurs during the policy period." Ex. A, p. NAUTILUS_00008. The Policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. A, p. NAUTILUS_00022. "Property damage" is defined by the Policy as

---

[2] As with the citations to the Applications, given that the Policies in many instances contain the same terms, unless otherwise expressly noted only one Policy (the 2018-2019 Policy) is cited for efficiency and ease of reading when the referenced terms of the Policies are identical.

"[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." *Id.*

25. Section IV of the Policies' Commercial General Liability Conditions contain Defendant Beck's representations in accepting the Policies as the named insured, including as follows: "By accepting this policy, you agree: a. The statements in the Declarations are accurate and complete; b. Those statements are based upon representations you made to us; and c. We have issued this policy in reliance upon your representations." Ex. A, p. NAUTILUS_00019-20.

26. In addition to the above-described terms, the Policies contain certain exclusions that preclude or otherwise limit coverage under the Policies.

27. Pursuant to the Damage To Property Exclusion j(1), the Policies do not provide coverage for damage to property that is owned by Defendant Beck or costs or expenses incurred to repair or replace such property. Ex. A, p. NAUTILUS_00011-12.

28. Pursuant to Exclusion j(5), the Policies do not provide coverage for "property damage" to "[t]hat particular part of real property" on which the insured or its subcontractors "are performing operations," if the " 'property damage' arises out of those operations." *Id.*

29. Pursuant to Exclusion j(6), the Policies do not provide coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Ex. A, p. NAUTILUS_00011-12.

30. Pursuant to the Damage To Your Product Exclusion (k), coverage is barred for " '[p]roperty damage' to 'your product' arising out of it or any part of it." "Your product" includes "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured. Ex. A, p. NAUTILUS_00012, 00023.

31. Per the Damage to Your Work Exclusion (l), there is no coverage under the Policies for " 'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " Ex. A, p. NAUTILUS_00012.

32. Pursuant to the Damage To Impaired Property Or Property Not Physically Injured Exclusion (m), the Policies exclude coverage for " '[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." Ex. A, p. NAUTILUS_00012.

33. Pursuant to the Recall Of Products, Work Or Impaired Property Exclusion (n), "[d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of (1) 'Your product'; (2) 'Your work'; or (3) 'Impaired property' " are excluded from coverage if such product, work or property is withdrawn from use because of a "known or suspected defect, deficiency, inadequacy or dangerous condition in it." Ex. A, p. NAUTILUS_00012.

34. Pursuant to the Expected Or Intended Injury Exclusion (a), coverage under the Policies does not extend to " 'property damage' expected or intended from the standpoint of the insured." Ex. A, p. NAUTILUS_00009.

35. Pursuant to the Contractual Liability Exclusion (b), any "property damage" "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" is excluded from coverage unless the insured would have liability in the absence of the contract or the liability has been assumed in an "insured contract." Ex. A, p. NAUTILUS_00009.

PD.49537328.4

36. Pursuant to the Professional Services—Contractors, Engineers, Architects, Surveyors and Construction Management Exclusion, there is no coverage for "property damage . . . arising out of the rendering of or failure to render any professional services" by the insured or on the insured's behalf. Ex. A, p. NAUTILUS_00042.

37. The Policies contain a Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants Exclusion which precludes coverage for any "property damage . . . arising out of, related to, caused by or in any way connected with", among other things, the presence or existence of "any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold . . . at any time." Ex. A, p. NAUTILUS_00045.

38. Pursuant to the Residential Construction Operations Coverage Limitations and Exclusion, the 2020-2021, 2021-2022, 2022-2023, 2023-2024, and 2024-2025 Policies do not provide coverage for " 'property damage' . . . arising out of, resulting from, related to, or in any way connected with, either directly or indirectly," the insured's ongoing operations, "product," or "work" for any construction project for any "new townhouse or residential condominium project where the total number of individual residential units is greater than twenty-five (25);" any "new residential housing project (also known as Planned Unit Development (PUD) or tract housing), where the total number of 'residential housing units' is greater than twenty-five (25);" or any "conversion of apartments to condominiums or townhomes," all regardless of the number of "buildings, developments, phases, or associations." Ex. C, p. NAUTILUS_00155; Ex. D, p. NAUTILUS_00210; Ex. E, p. NAUTILUS_00270; Ex. F, p. NAUTILUS_00331; Ex. G, p. NAUTILUS_00402.

39. Pursuant to the Continuous or Progressive Damage Exclusion, the Policies do not provide coverage for "property damage" that "first occurs, or is alleged to first occur, prior to the

effective date of" the applicable policy or that "first occurs, or is alleged to first occur, prior to the effective date of this policy and continue during" the relevant policy period. Ex. A, p. NAUTILUS_00051.

**THE OSTERHAUSES' ALLEGATIONS AND NAUTILUS' INVESTIGATION**

40. On or about February 16, 2024, Nautilus was provided with the February 9, 2024 Notice of Claim letter sent to Defendant Beck by counsel for the Osterhauses, which correspondence set forth allegations that Defendant Beck (along with Westmore), performed defective work with regard to the construction of a newly built and purchased home located at 22 Westmore Drive, Asheville, North Carolina (the "Property"). *See* Ex. H.

41. In particular, the Notice of Claim asserted that the Property was less than two years old, and that since the construction of the Property and its purchase by the Osterhauses, they had discovered multiple "issues of concern with the construction of the house," including: indications of foundation settlement (including cracks in foundations, interior walls, uneven floors); improper grading of the lot and lack of proper drainage (evidence by significant water intrusion in crawl spaces and water inundating the yard); that testing revealed the Property was built on improperly compacted fill dirt); and oversized footings upon which foundation walls were uncentered thereby resulting in problematic and costly remediation. Ex. H, p. NAUTILUS_00426-427.

42. The Notice of Claim further asserted that, as a result of the alleged issues with the Property that had been discovered, "significant remedial work" would have to be undertaken. The Notice of Claim Letter further provided Defendant Beck and Westmore the opportunity to repair and make corrections to the alleged deficiencies and provide notice regarding whether they agreed to do so within ten days of the date of the Notice of Claim letter. Ex. H, p. NAUTILUS_00427.

43. Upon receipt of the Notice of Clam, Nautilus retained an independent adjuster from Custard Insurance Adjusters to assist in the investigation of the claim.

44. As the investigation proceeded, communications with Defendant Beck and a review of documentation related to the construction of the Property and its sale to the Osterhauses revealed that Defendant Beck may have served as the general contractor for the construction of the Property.

45. Because the Policies were not rated or written to cover Defendant Beck's work as a general contractor based on the representations in the Applications—and in light of the lack of clarity concerning Defendant Beck's duties and work performed with regard to the Property (particularly given the involvement of Westmore, who was also indicated to have been involved in the general construction of the Property)—Nautilus sent a Reservation of Rights and Request for Information Letter ("Initial ROR/RFI Letter") to Defendant Beck on July 29, 2024. A copy of the Initial ROR/RFI Letter is attached hereto as **Exhibit P.**

46. The Initial ROR/RFI Letter invoked the Conditions of the Policies to request that Defendant Beck provide information and documents with respect to Nautilus' investigation of the claim as it related to, among other things, the scope of work performed by Defendant Beck with respect to the construction of the Property, Defendant Beck's status and work as a general contractor as related to the build of the Property and otherwise, Defendant Beck's relationship with or to Westmore, and the timing of the construction of the Property and its sale to the Osterhauses. Ex. P, p. NAUTILUS_00499-502.

47. Additionally, the Initial ROR/RFI Letter expressly reserved Nautilus' rights with respect to Nautilus' ability to seek rescission of one or more of the Policies based on the representations made in the Applications. The Initial ROR/RFI Letter further reserved Nautilus' rights with respect to coverage for the Osterhauses' claims based on various terms, conditions, limitations, and exclusions in the Policies. Ex. P, p. NAUTILUS_00485-499.

12

Case 1:25-cv-00236-MR-WCM    Document 1    Filed 07/28/25    Page 12 of 20
PD.49537328.4

48. After receiving no response to the various requests for information in the Initial ROR/RFI Letter, on December 3, 2024, Nautilus issued correspondence to Defendant Beck reiterating its request for information and documents—and its reservations of rights—that that were featured in the Initial ROR/RFI Letter ("Follow Up RFI Letter"). A copy of the Follow Up RFI Letter is attached hereto as **Exhibit Q**.

49. On December 31, 2024, in response to the requests for information in the Follow Up RFI Letter, Defendant Beck provided written responses to Nautilus' questions as well as certain documentation sought by Nautilus ("RFI Responses"). A copy of Defendant Beck's RFI Responses are attached hereto as **Exhibit R**.

50. The RFI Responses and related documents provided by Defendant Beck revealed, in pertinent part, as follows:

   a. Defendant Beck has been a licensed general contractor in North Carolina since October 1998. Ex. R, p. NAUTILUS_00513, ¶ 1.

   b. Defendant Beck served as the general contractor with regard to the construction of the Property and "provided oversight of all phases of construction framing, plumbing, electrical, roofing, sheetrock, flooring etc." Ex. R, p. NAUTILUS_00514, ¶ 15.

   c. A permit for the construction of the Property was issued on September 20, 2021; the final inspection of the Property after its completion was on July 14, 2022; and that title to the Property was transferred to the Osterhauses in November 2022. Ex. R, p. NAUTILUS_00513, ¶ 10-12.

PD.49537328.4

d. Defendant Beck had served as the general contractor for the construction of eight different homes on the same street that contained the Property from the period of 2008 through 2024. Ex. R, p. NAUTILUS_00515, ¶ 25.

e. Defendant Beck "manag[ed] all the construction and subcontracting under his General Contractors' license for Westmore" with regard to the construction of the Property. Ex. R, p. NAUTILUS_00513, ¶ 6.

f. Documents provided in response to the requests for information noted that subcontractors for grading, painting, plumbing, drywall/finishing, roofing, electrical, and construction and framing, were hired and overseen by Defendant Beck for the construction of the Property. Ex. R, p. NAUTILUS_00518-523.

g. Documents provided further showed that Defendant Beck was paid at least $32,000 for his work as general contractor in relation to the Property. Ex. R, p. NAUTILUS_00518-521.

51. On May 6, 2025, the Osterhauses filed the Underlying Lawsuit against Defendant Beck and Westmore. *See* Ex. I.

52. In the Underlying Lawsuit, the Osterhauses allege that Defendant Beck was a licensed North Carolina General Contractor and that Defendant Beck served as the general contractor for the construction of the Property. Ex. I, p. NAUTILUS_00429, ¶ 3, 5.

53. The Underlying Lawsuit Complaint alleges that shortly after purchasing the Property, the Osterhauses noted various issues with the Property including yard drainage problems, deterioration of the driveway, substantial water intrusion into the crawl space, settlement cracks throughout the house, cracks in the foundation walls, and unlevel floors in various locations throughout the house, and that Defendant Beck and Westmore took some remedial action to correct

certain of these issues upon being notified of the same but that these remedial actions did not resolve the multiple issues with the Property. *Id.*, p. NAUTILUS_00430-431, ¶ 10-13.

54. An inspection of the Property commissioned by the Osterhauses allegedly uncovered improperly installed gutter downspouts, a cut and collapsed drainage line, defective installation of foundation drains, inoperable and missing foundation drains, improperly installed foundation footings, improper foundation waterproofing, improper and defective installation of a sewer line, and improper installation of the home's heat pump such that the Property purportedly necessitates significant remedial action to address the various issues identified. *Id.*, p. NAUTILUS_00431-432, ¶ 17-18.

55. As a result of the alleged deficiencies with respect to the construction of the Property and resulting damages, the Osterhauses brought claims for (i) Negligent Construction; (ii) Breach of Express Warranty; (iii) Breach of Implied Warranty; and (iv) Negligence Per Se due to an alleged failure to comply with the North Carolina Building Code. *Id.*, p. NAUTILUS_00432-435, ¶ 22-41.

56. Following receipt of notice of the Underlying Lawsuit, Nautilus agreed to provide Defendant Beck with a defense in the Underlying Lawsuit pursuant to a complete reservation of rights, including specifically with regard to rescission of the Policies based on material misrepresentations in the Applications.

### COUNT I – DECLARATORY JUDGMENT FOR RESCISSION

57. Nautilus adopts and incorporates by reference all allegations contained in Paragraphs 1 through 56 as though fully set forth herein.

58. Nautilus, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeks a declaratory judgment that the Policies are void *ab initio* based upon the material misrepresentations and/or omissions of Defendant Beck in the Applications for the Policies and

that Nautilus does not have any obligation to provide a defense to, or indemnify, Defendant Beck or any other person or entity that would qualify as an insured under the Policies, with respect to the claims of the Osterhauses in the Underlying Lawsuit. Such a declaration will confer certainty on the parties with respect to their rights and obligations under the Policy and will therefore serve the interests of justice.

59. Defendant Beck made material misrepresentations and/or omissions on the Applications for the Policies as it concerns the nature of his work as a general contractor, the hiring and use of subcontractors with respect to the scope of his work, the performance of roofing work and earth moving work, and his gross receipts for work performed.

60. Specifically, the Applications signed by Defendant Beck represent that Defendant Beck is an "Artisan Contractor"—and not a "General Contractor"—whose "Description of Operations" are noted to be "carpentry." Ex. J, p. NAUTILUS_00438, 00442. However, per the information and documents provided in response to requests for information, Defendant Beck has expressly admitted that he served as the general contractor for the construction of the Property and further, that he had been the general contractor for the construction of other homes on the same street as the Property since 2008. Ex. R, p. NAUTILUS_00514-515, ¶ 15, 25.

61. The Applications further provide that Defendant Beck subcontracted "0%" of his work, did not hire contractors, and had no subcontractor costs or paid no monies to subcontractors, Ex. J, p. NAUTILUS_00441-442. The information and documents provided by Defendant Beck during the claim investigation establish that much of the work for the construction of the Property (for which Defendant Beck served as the general contractor) was subcontracted and overseen by Defendant Beck. *See* Ex. R, p. NAUTILUS_00514, ¶ 15, 17. Although Defendant Beck

represented that "0%" of his work was done by subcontractors, in fact nearly all, if not all, of the work performed on the project was done by subcontractors.

62. The payment Defendant Beck received for this one project alone was at least 128% more than what he represented his gross receipts would be for an entire year. The Applications provide that Defendant's Beck's gross receipts were $25,000 and payroll costs were $24,000. Ex. J, p. NAUTILUS_00442. Invoice and payment information acquired by Nautilus from Defendant Beck during the claim investigation, however, indicates that Defendant Beck was paid at least $32,000, but likely more, for serving as general contractor for the construction of the Property. Ex. R, p. NAUTILUS_00515, ¶ 30; _00518-521.

63. The Applications represent that neither Defendant Beck nor any subcontractors perform and roofing work. Ex. J, p. NAUTILUS_00442. Information provided by Defendant Beck in response to the requests for information, however, reveal that roofing work was done on the project, a subcontractor was hired to do such work, and Defendant Beck oversaw that roofing work. Ex. R, p. NAUTILUS_00514, ¶ 15; _00523.

64. Nautilus relied upon and was influenced by these representations in evaluating the risk of issuing each of the Policies and fixing the rate of the premium under the Policies.

65. The Policies are void *ab initio* based on each of the above-described misrepresentations in the Applications pursuant to N.C.G.S. § 58-3-10 and other applicable law.

66. Prior to the filing of this complaint, Nautilus refunded the premiums paid by Defendant Beck as to each of the Policies in accordance with Nautilus' position that the Policies are void *ab initio*.

WHEREFORE, Plaintiff Nautilus prays that this Honorable Court:

    a. Enter a declaratory judgment declaring that Plaintiff, Nautilus, may rescind, the Policy pursuant to N.C.G.S. § 58-3-10 and other applicable law;

b. award Plaintiff, Nautilus, the costs of this action; and

c. award any other relief the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF

67. Nautilus adopts and incorporates by reference all allegations contained in Paragraphs 1 through 66 as though fully set forth herein.

68. Strictly in the alternative, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Nautilus seeks a judicial declaration that Defendant Beck is not an insured under the Policies. Such a declaration will confer certainty on the parties with respect to their rights and obligations under the Policy and therefore will serve the interests of justice.

69. Each of the Policies states in Section II – Who Is An Insured: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." Ex. A, p. NAUTILUS_00017.

70. The only named insured in the Policies' Declarations is David Beck. Ex. A, p. NAUTILUS_00004.

71. In the Underlying Lawsuit, the Osterhauses allege: "David J. Beck is the son of the members of Westmore Properties, LLC and constructed the Westmore House as part of a joint venture between himself and Westmore Properties, LLC to develop multiple single-family homes on Westmore Dr., Asheville, NC." Ex. I., p. NAUTILUS_00430, ¶ 6.

72. Per the terms of the Policies, Defendant Beck is not an insured with the respect to the conduct of the joint venture alleged in the Underlying Lawsuit.

WHEREFORE, Plaintiff Nautilus prays that this Honorable Court:

a. enter a declaratory judgment declaring that Plaintiff, Nautilus, has no duty to defend or indemnify Defendant Beck against any claims asserted by the Osterhauses in any suit or proceeding;

b. award Plaintiff, Nautilus, the costs of this action; and

c. award any other relief the Court deems just and proper.

## COUNT III – DECLARATORY RELIEF

73. Nautilus adopts and incorporates by reference all allegations contained in Paragraphs 1 through 72 as though fully set forth herein.

74. Strictly in the alternative, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Nautilus seeks a judicial declaration of its rights and duties to Defendant Beck under the Policies with respect to the claims in the Underlying Lawsuit. Such a declaration will confer certainty on the parties with respect to their rights and obligations under the Policy and therefore will serve the interests of justice.

75. Nautilus has no duty to defend or indemnify any party in connection with the claims of the Osterhauses or pay any sums that Defendant Beck may be legally obligated to pay the Osterhauses in connection with the claims made in the Underlying Lawsuit.

76. The claims and alleged damages that are the subject of the Underlying Lawsuit are precluded from coverage in whole or in part based upon: (i) the absence of an "occurrence" or "property damage" during the policy period as those terms are defined by the Policy and North Carolina law; (ii) the Damage To Property Exclusions j(1), j(5), and j(6); (iii) the Damage To Your Product Exclusion (k); (iv) the Damage to Your Work Exclusion (l); (v) the Damage To Impaired Property Or Property Not Physically Injured Exclusion (m); (vi) the Recall Of Products, Work Or Impaired Property Exclusion (n); (vii) the Expected Or Intended Injury Exclusion; (viii) the Contractual Liability Exclusion; (ix) the Professional Services—Contractors, Engineers,

Architects, Surveyors and Construction Management Exclusion; (x) the Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants Exclusion; and (xi) the Residential Construction Operations Coverage Limitation and Exclusion; and (xii) the Continuous or Progressive Damage Exclusion.

WHEREFORE, Plaintiff Nautilus prays that this Honorable Court

    a. enter a declaratory judgment declaring that Plaintiff, Nautilus, has no duty to defend or indemnify Defendant Beck against any claims asserted by the Osterhauses in any suit or proceeding;

    b. award Plaintiff, Nautilus, the costs of this action; and

    c. award any other relief the Court deems just and proper.

This the 28th day of July, 2025

*/s/ Christy M. Maple*
Robert Kennedy, NC Bar No. 36865
Christy M. Maple, NC Bar No. 50375
Turner R. Albernaz, NC Bar No. 53369
PHELPS DUNBAR LLP
4141 ParkLake Ave., Suite 530
Raleigh, North Carolina 27612
Telephone: 919 789 5300
Facsimile: 919 789 5301
Email: robert.kennedy@phelps.com
Email: christy.maple@phelps.com
Email: turner.albernaz@phelps.com

*Attorneys for Plaintiff Nautilus Insurance Company*